**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

KENETTA M., as Heir and Representative of the Estate of Kenneth Edward M.,[1]

Plaintiff,

v.

FRANK J. BISIGNANO, Commissioner of Social Security,

Defendant.

Case No.: 3:25-cv-01770-VET

**ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

**[ECF No. 32]**

## I. INTRODUCTION

On July 10, 2025, Plaintiff Kenetta M. ("Plaintiff") filed a complaint challenging Defendant Commissioner's ("Commissioner" or "Agency") denial of Kenneth Edward M.'s ("Claimant") application for disability insurance benefits. ECF No. 1. In accordance with the Court's Scheduling Order, Plaintiff timely filed an opening brief and Defendant filed a responsive brief. *See* ECF Nos. 27, 32, 33. Having considered the parties' arguments, applicable law, and the record before it, and for the reasons discussed below, the Court **AFFIRMS** the Commissioner's final decision.

[1] Partially redacted in compliance with Civil Local Rule 7.1(e)(6)(b).

# II. BACKGROUND

## A. Procedural History

On September 11, 2014, Claimant applied for disability insurance benefits and supplemental security income pursuant to the Social Security Act, alleging disability since January 4, 2013 ("Alleged Onset Date"). Administrative Record ("AR") 307–310, 311–316, 11027, 11033, 11051.[2] Claimant's application moved through the administrative appeals process and an Administrative Law Judge ("ALJ") reviewed the application on three separate occasions. AR 43–62, 878–915, 11023–43. On each occasion, the ALJ found that Claimant was not disabled between the Alleged Onset Date and the date last insured of December 31, 2013 ("Date Last Insured").[3] AR 43–62, 878–915, 11023–43. Claimant sought judicial review in this Court following each ALJ decision. *See* AR 1001–18, 11075–90.

The Court reversed the first ALJ's decision and remanded for further proceedings. AR 43–62, 1001–18. The second ALJ determined that Claimant became disabled on January 1, 2022, but was not disabled before that date. AR 878–915. On review, the Court reversed and again remanded for further proceedings. AR 11075–90. Following this second remand, the Appeals Council (1) affirmed the second ALJ's finding that Claimant was disabled beginning January 1, 2022 and (2) remanded to a third ALJ to determine whether Claimant was disabled before that date. AR 902, 11091–94.

On August 1, 2023, before the third ALJ decided the claims, Claimant passed away. AR 11232–33. Plaintiff, Claimant's daughter, substituted in to pursue Claimant's claims. AR 11026, 11232–33.

---

[2] The AR is electronically filed at ECF Nos. 10–22.

[3] The "date last insured" refers to "the last day of the quarter a claimant[] meets insured status for disability or blindness." U.S. Soc. Sec. Admin., DI 25501.320, Program Operations Manual System (2015).

On September 27, 2024, the third ALJ determined that Claimant was not disabled from the Alleged Onset Date to the Date Last Insured. AR 11027. The third ALJ's decision became the Commissioner's final decision. AR 11023–43 ("Final Decision"); 42 U.S.C. § 405(h). On July 10, 2025, Plaintiff timely initiated this action seeking judicial review of the Final Decision. ECF No. 1; *see also* AR 11015–17.

**B. Summary of the Final Decision**

In the Final Decision, and as directed by the Appeals Council, the ALJ considered the issue of disability prior to January 1, 2022. AR 11026. This issue required that the ALJ evaluate whether Claimant met the insured status requirements of Sections 216(i) and 223 of the Social Security Act. AR 11027. The Claimant's earnings records showed he acquired sufficient quarters of coverage to remain insured through December 31, 2013, *i.e.*, the Date Last Insured. *Id.* Thus, Claimant had to establish disability on or before December 31, 2013 "to be entitled to a period of disability and disability insurance benefits." *Id.*; *see also* 42 U.S.C. §§ 416(i), 423; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (to be entitled to disability benefits, claimant must establish that disability existed on or before the date last insured).

The ALJ followed the Agency's five-step sequential evaluation process in making the disability determination. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Claimant "did not engage in substantial gainful activity after January 4, 2013." AR 11029. At step two, the ALJ evaluated the medical record and opinions of several medical experts, including Dr. Harvey Alpern, to determine the existence of a medically determinable physical or mental impairment. AR 11029–32. The ALJ found "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to the date last insured of December 31, 2013." AR 11033. Accordingly, the ALJ found that Claimant was not disabled, as defined by the Social Security Act, from the Alleged Onset Date through the Date Last Insured. AR 11033.

**C. Summary of Expert Opinions**

1. Opinions of G. Spinka, M.D., and Leonard H. Naiman, M.D.

Two State agency consultants, Drs. G. Spinka and Leonard Naiman (collectively the "State Agency Consultants"), reviewed Claimant's medical records to assess his impairments. AR 113–180. During the initial review of Claimant's application, Dr. Spinka found insufficient evidence to assess Claimant's conditions prior to the Date Last Insured. *See* AR 113–146, 11031; ECF No. 32 at 4–5. On reconsideration, Dr. Naiman similarly opined that there was "[i]nsufficient medical evidence to fully evaluate [Claimant's] physical functional status" at the Date Last Insured. AR 157; *see also* AR 147–180, 11031; ECF No. 32 at 5. The ALJ gave "great weight" to both opinions, concluding that each was consistent with the record. AR 11031.

2. Opinion of Arnold Ostrow, M.D.

During a February 28, 2017 hearing, Dr. Arnold Ostrow testified and opined that Claimant had the following impairments since the Alleged Onset Date: obstructive sleep apnea, morbid obesity, hypertension, cardiomyopathy, status post intracerebral hemorrhage and subarachnoid hemorrhage, congestive heart failure with peripheral edema, diabetes mellitus, and chronic kidney disease. AR 85, 11031. The ALJ gave "little weight" to Dr. Ostrow's opinion because it was "inconsistent with Dr. Ostrow's own citations to the evidence, which all document that the claimant was diagnosed with these impairments in 2014, which is after the date last insured." AR 11031. The ALJ further found that the "opinion is not consistent with the opinions of Dr. Smiley or the State agency medical consultants." *Id.* "Specifically, there is no objective medical evidence or a medically determinable impairment until June 2014." *Id.*

3. Opinion of Harvey Alpern, M.D.

During a May 18, 2021 hearing, Dr. Alpern testified that Claimant had the following impairments: "ischemic – non-ischemic cardiomyopathy, hypertension, diabetes, headaches, brain aneurysm with memory loss, degenerative disc disease and venous insufficiency with venous ulcers." AR 949. Based on his review of the records, Dr. Alpern

opined that "it would appear that in [the] first year, which was *probably* before December of '13 and for a year at least," Claimant met the Agency's Listing of Impairments 4.02(A)(1) and (B)(1) for Chronic Heart Failure. *Id.* (emphasis added); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.02(A)(1), (B)(1) (2025). Dr. Alpern explained how he reached this opinion in the following exchange with the ALJ:

> Q: Okay. That's a pretty good summary. All right. You told me you thought there might have been a period for about a year back early in the period that's relevant to the claim where he met that listing 4.02 Al, Bl. Which of the impairments qualified him to meet that listing in your judgment?
>
> A: Well, ejection fraction of less than 30%.
>
> Q: And which of the impairments is that related to?
>
> A: Cardiomyopathy.
>
> Q: Cardiomyopathy. And how long did he have the 26% ejection fraction?
>
> A: At least for a year, but I -- the end of 2014, he no longer have [sic] it.
>
> Q: All right. His alleged onset date is January 4th, 2013. Does that correspond to any significant medical event involving the cardiomyopathy and the ejection fraction based on your review of the file?
>
> A: I *assume* the ejection fraction was *probably* present at that time from the hypertension. However, the records do no [sic] show anything in January of '13. They start in 2014.

AR 949–950 (emphasis added). The ALJ gave "little weight" to Dr. Alpern's opinion, finding as follows:

> Dr. Alpern, the medical expert at the May 2021 hearing opined the claimant met listing 4.02 in 2013. Dr. Alpern's testimony that the claimant met listing 4.02 in 2013 is given little weight because he testified that there was no objective evidence in the record prior to June 2014, but he assumed that the claimant had a low ejection fraction prior to June 2014 despite no evidence of treatment prior to December 31, 2013. Dr. Alpern's testimony is not supported by the objective evidence, which reveals no treatment or evidence of a medically determinable impairment prior to June 2014 and is not consistent with the opinions of Dr. Smiley or the State agency medical consultants.

AR 11031.

4. <u>Opinion of Robert Smiley, M.D.</u>

During a September 17, 2024 hearing, Dr. Robert Smiley testified that he does not "have any information prior to June '14" related to Claimant's medical status. AR 11055–56. Dr. Smiley explained the "problem" of trying to delineate the Claimant's medically determinable impairments and their onset date as follows:

> Well, the record begins in June '14 when [Claimant] entered the hospital with acute congestive failure. This his [sic] initial echo was that [sic] showed an ejection fraction of 26 percent, that's listing level congestive failure. Now he had coronary angiograms at that time which did not show any significant coronary disease, so basically what he had was congestive failure secondary to uncontrolled hypertension.
>
> The heart isn't designed to pump against such a high resistance, and over time it will fail. The only thing, my problem for today is when did it get that bad. And now there is nothing in the record that tells me. I know what he was like in June '14. How long before that was he in bad shape, I don't know. And that would require speculation on my part and I don't speculate.

AR 11056. The ALJ gave "great weight" to Dr. Smiley's opinion. AR 11031.

## III. STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation modified); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a preponderance"). A court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The Court may not impose its own reasoning to affirm the ALJ's decision. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "If the evidence is susceptible to

more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation modified). Thus, "review of an ALJ's fact-finding for substantial evidence is deferential, and the threshold for such evidentiary sufficiency is not high." *Ford*, 950 F.3d at 1159 (citation modified); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) ("Overall, the standard of review is highly deferential.").

Lastly, the Court will not reverse for harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (citation modified).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred by assigning "little weight" to Dr. Alpern's opinion and concluding that Claimant's cardiomyopathy was not present prior to the Date Last Insured. ECF No. 32 at 4, 9–11. For the reasons stated below, the Court finds no error.

### A. <u>Legal Standard Regarding Medical Opinions</u>

Because Plaintiff applied for disability insurance benefits before March 27, 2017, 20 C.F.R. Section 404.1527 applies to his claim. *See* 20 C.F.R. § 404.1527 (regulation only applicable to claims filed before March 27, 2017); *see also Woods v. Kijakazi*, 32 F.4th 785, 789–792 (9th Cir. 2022) (explaining the differences between the old and new standards for evaluating medical opinions). Section 404.1527 sets forth rules for evaluating opinion evidence and requires that an ALJ give greater weight to certain medical opinions. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Specifically, it requires that the ALJ give more weight to the medical opinions of treating sources and sources who examined a claimant, *e.g.*, a treating physician, than to the opinions of medical sources who did not examine a claimant. *See* 20 C.F.R. §§ 404.1527(c)(1)–(2). The ALJ must also consider whether each opinion is supported by evidence and consistent with the record. *See* 20 C.F.R. §§ 404.1527(c)(3)–(4); *see also Farlow*, 53 F.4th at 488 (explaining what the pre-2017 regulations require). "To reject the uncontested opinion of an examining or treating

doctor, an ALJ must provide 'clear and convincing' reasons supported by substantial evidence." *Farlow*, 53 F.4th at 488.

In turn, when evaluating the weight given to a non-examining, non-treating doctor's opinion, an ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998); *see also Farlow*, 53 F.4th at 488. "Inherent in this standard is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow*, 53 F.4th at 488. Additionally, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam). This is particularly true of a testifying medical expert, who is subject to questioning by a claimant's representative. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).

Ultimately, the ALJ is responsible for resolving conflicts in the record, and a court will not disturb an ALJ's findings if they are supported. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**B. <u>Opinion of Harvey Alpern, M.D.</u>**

Here, the ALJ assigned "little weight" to Dr. Alpern's opinion that Claimant's cardiomyopathy "met listing 4.02 in 2013." AR 11031. Plaintiff argues this was error because the record was ambiguous and Dr. Alpern drew a "reasonable inference" from the medical record that Claimant's cardiomyopathy existed prior to the Date Last Insured. ECF No. 32 at 11. Plaintiff also suggests that because Dr. Alpern's opinion is uncontroverted, it may only be rejected for "clear and convincing" reasons. ECF No. 32 at 11–12. The Court disagrees on both counts.

First, contrary to Plaintiff's suggestion, the "clear and convincing" standard is not applicable because Dr. Alpern is not an examining or treating doctor. *See* AR 946 (ALJ confirming that Dr. Alpern is testifying based on his review of the full medical file), 949

(Dr. Alpern offering opinion based on his review of the records); *see also Farlow*, 53 F.4th at 488 (holding that the "clear and convincing" standard did not apply to the opinions of a doctor that never treated or examined the claimant). As such, the Court does not apply the "clear and convincing" standard in evaluating Dr. Alpern's opinion. *See Farlow*, 53 F.4th at 488 (expressly rejecting the proposition that the "clear and convincing" standard applies to uncontested opinions from non-examining physicians). Rather, as instructed by the Ninth Circuit, the Court determines whether the ALJ rejected Dr. Alpern's opinion by reference to specific evidence in the medical record. *Id.* ("an ALJ may reject the opinion of a non-examining physician by reference to specific evidence in the medical record") (citation modified); *Sousa*, 143 F.3d at 1244 (same).

Applying this standard, and considering the factors in 20 C.F.R. Section 404.1527 that govern the ALJ's evaluation of medical-opinion evidence, the Court finds that the ALJ did not err in discounting Dr. Alpern's opinion. As the ALJ emphasized, Dr. Alpern testified that no evidence existed in the record showing ejection fraction in 2013. AR 950, 11031. Dr. Alpern also testified that such records started in 2014, and he "assume[d] the ejection fraction was probably present at that time [*i.e.*, January 2013] from the hypertension." AR 950. Having confirmed that no records documenting ejection fraction existed before 2014, Dr. Alpern did not cite or refer to any objective evidence showing a medically determinable impairment in 2013. AR 949–950. Nor did Dr. Alpern explain why it was appropriate to make any assumptions about Claimant's cardiomyopathy. As such, Dr. Alpern offered an opinion without any support, as the ALJ noted.

The ALJ was not required to accept Dr. Alpern's conclusory opinion, which rested on assumptions and lacked support in the medical record. *See Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015) ("[A]n administrative law judge may disregard medical opinion that is brief, conclusory, and inadequately supported by clinical findings."); *Ford*, 950 F.3d at 1154 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *see also* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source

provides for a medical opinion, the more weight we will give that medical opinion.”). Instead, the ALJ correctly concluded that Dr. Alpern’s opinion was not supported by the objective evidence, which showed no treatment or evidence of a medically determinable impairment prior to June 2014. *Hernandez v. Saul*, 808 F. App’x 425, 427 (9th Cir. 2020) (holding that ALJ properly discounted doctor’s opinion because it was accompanied by little supporting reasoning and no clinical findings); *see also* AR 447–528 (records from June 2014 first documenting ejection fraction).

Plaintiff further argues that the ALJ erred by finding that Dr. Alpern’s opinion was “not consistent with the opinions of Dr. Smiley and the State agency medical consultants” and assigning great weight to those opinions. ECF No. 32 at 9–11; AR 11031. Unlike Dr. Alpern, Dr. Smiley and the State Agency Consultants did not identify a medically determinable impairment before the Date Last Insured. Dr. Smiley confirmed that Claimant’s ejection fraction was 26 percent as of June 2014, but he also testified that there was no “information prior to June ’14.” AR 11056. Because the record contained no information establishing an earlier onset date, Dr. Smiley testified that he did not know how long Claimant had experienced congestive heart failure before June 2014 and he would not “speculate.” *Id.* The State Agency Consultants likewise found insufficient evidence to establish an onset date before the Date Last Insured. AR 125, 157, 11031. Plaintiff contends that these “opinions” are not “medical opinions,” as defined by 20 C.F.R. § 404.1527, and thus no inconsistency exists between Dr. Alpern’s opinion and the opinion of any other physician. ECF No. 32 at 11.

Plaintiff’s contention misses the mark. The absence of any inconsistency does not cure the central defect in Dr. Alpern’s opinion: regardless of whether Dr. Smiley and the State Agency Consultants rendered “medical opinions,” Dr. Alpern’s opinion remains speculative and unsupported by clinical findings or other objective evidence. Accordingly, even assuming without deciding that the ALJ erred in characterizing Dr. Smiley’s and the State Agency Consultants’ conclusions as “opinions,” any such error was harmless. *See Stout v. Comm’r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (An error is

harmless if "the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

Lastly, to the extent Plaintiff contends that substantial evidence does not support the ALJ's disability determination, the Court disagrees. ECF No. 32 at 4. The ALJ reviewed the extensive medical record; considered function reports, questionnaires, and Claimant's testimony; and evaluated the opinions of multiple medical experts. AR 11029–32.

The ALJ reasonably found that the function reports and questionnaires were completed after the Date Last Insured or reflected symptoms from events arising after that date. AR 11030–31. Claimant's testimony likewise concerned symptoms and limitations occurring after the date last insured. *Id.* Moreover, after reviewing the medical evidence, the ALJ found "no objective evidence from an acceptable medical source or medically acceptable 'signs' and/or 'laboratory findings' showing anatomical, physiological, or psychological abnormalities prior to the date last insured." AR 11031. The ALJ further noted that the first evidence of treatment occurred on June 9, 2014—consistent with Claimant's own testimony and reports that his symptoms and limitations began in 2014. *Id.* The ALJ also observed that Claimant failed to submit medical evidence documenting physical impairments before the Date Last Insured. AR 11030–31. The ALJ then methodically evaluated and weighed the medical-opinion evidence. AR 11031–32.

Other than her challenge to the ALJ's treatment of Dr. Alpern's opinion, Plaintiff does not dispute these findings.[4] Nor does Plaintiff identify evidence, apart from Dr. Alpern's opinion, supporting the conclusion that Claimant had a medically determinable impairment prior to the Date Last Insured. *See Tidwell*, 161 F.3d at 601 ("At all times, the burden is on the claimant to establish her entitlement to disability insurance

---

[4] Plaintiff initially argued that the ALJ also erred by giving "little weight" to Dr. Ostrow's opinion. ECF No. 32 at 8. However, Plaintiff subsequently abandoned the argument in favor of pursuing arguments concerning Dr. Alpern's opinion. *Id.* at 10 ("Setting aside Dr. Ostrow's opinion – and whether the ALJ properly rejected it – Dr. Alpern's opinion is central to the case at bar.").

benefits.”). As discussed above, the ALJ properly discounted Dr. Alpern’s opinion. Accordingly, the Court finds that substantial evidence supports the ALJ’s conclusion that Claimant was not disabled during the relevant period—from January 4, 2013, through December 31, 2013.

In sum, Dr. Alpern assumed that Claimant’s cardiomyopathy was “probably” present in January 2013. AR 950. He acknowledged, however, that there are no records reflecting “anything in January of ’13” and that the available records “start in 2014.” *Id.* Considering that admission, the absence of objective evidence prior to June 2014, and the conclusions of other medical experts that the requisite finding could not be made based on the available records, the ALJ gave Dr. Alpern’s opinion little weight. AR 11031. The Court finds that substantial evidence supports this conclusion.

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner’s final decision. **IT IS HEREBY ORDERED** that judgment be entered in favor of the Commissioner and against Plaintiff. The Clerk of the Court is directed to close this action.

**IT IS SO ORDERED**.

Dated: September 29, 2026



Honorable Valerie E. Torres
United States Magistrate Judge